UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ISHAUNA M. ALEXANDER,

                              Case No. No. 19-13697

          Plaintiff,               District Judge Linda V. Parker

v.                             Magistrate Judge R. Steven Whalen

ANDREW SAUL, COMMISSIONER OF
SOCIAL SECURITY,

          Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Ishauna M. Alexander brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. The parties have filed cross-motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment [ECF No. 15] be GRANTED and that Plaintiff's Motion for Summary Judgment [ECF No. 12] be DENIED.

# I.  PROCEDURAL HISTORY

On October 26, 2017, Plaintiff filed an application for SSI, alleging disability as of her birth date of November 28, 1993.  ECF No. 9-5, PageID.171 (Tr. 137)[1].  Upon initial denial of the claim, Plaintiff requested an administrative hearing, held on September 26, 2018 in Detroit, Michigan (Tr. 31).  Administrative Law Judge ("ALJ") Allison Dietz presided. Plaintiff, represented by attorney Clifford Walkon, testified (Tr. 36-51) as did Plaintiff's mother, Parrin Alexander (Tr. 52-57) and Vocational Expert ("VE") Harry Cynowa (Tr.  58-53).  On December 14, 2018, ALJ Dietz determined that Plaintiff was not disabled (Tr. 15-27).

On October 28, 2019, the Appeals Council declined to review the ALJ's decision (Tr. 1-6).  Plaintiff filed suit in this Court on December 16, 2019.

# II.  BACKGROUND FACTS

Plaintiff, born November 28, 1993, was 25 at the time of the  administrative decision (Tr. 27, 137).  She received a GED after dropping out of school in 11th grade (Tr. 149).  She alleges disability due to Autism Spectrum Disorder (Asperger's Syndrome), anxiety, arthritis, and knee instability (Tr. 148).

## A.  Testimony of Plaintiff and Plaintiff's Mother

## 1.  Plaintiff's Testimony

---

[1]References to the administrative record are henceforth cited by administrative transcript page number "(Tr.)."

Plaintiff offered the following testimony before the ALJ:

She lived with her mother, father, two adult brothers, and a sister-in-law (Tr. 36-37). She obtained a GED through a neighborhood learning center after failing 11th grade twice (Tr. 37). She failed 11th grade due to bullying by other students, difficult teachers, and learning difficulties (Tr. 37). She did not require assistance to fill out the disability application except to consult her mother for family medical history information (Tr. 40). She was able to count change during a sales transaction (Tr. 40). She was able to prepare simple meals and take care of her own personal needs but needed reminders to attend to hygiene (Tr. 41). She was able to wash dishes, load a dishwasher, vacuum, run a washing machine and dryer, and take care of the family dog (Tr. 41-42).

Plaintiff became "a little paranoid" after being left at home by herself for more than two hours (Tr. 42). She left the house by herself only to take the dog for a walk (Tr. 42). She babysat two children for "most" of the past summer for her aunt (Tr. 43). The babysitting responsibilities consisted of preparing meals, bathroom chores, and putting the children to bed (Tr. 44). Babysitting made her "constantly stressed out" (Tr. 44). She also babysat two children for a family friend approximately once a month at the friend's home (Tr. 45). She "pet sat" on only rare occasions (Tr. 46).

Plaintiff had no close girlfriends (Tr. 46). She used social media to play online games (Tr. 47). She did not eat out or go to the mall (Tr. 47). She dated a man from her church briefly (Tr. 47). She had not taken driver's training (Tr. 48). She slept up to 10 hours a night

and did not nap during the day (Tr. 48). She spent her waking hours doing chores, interacting with her parents, riding her bicycle, coloring, and reading (Tr. 49). As a result of therapy sessions and medication, Plaintiff communicated better with her family and was better able to cope with frustration (Tr. 49). Her medication side effects were limited to drowsiness and hiccups (Tr. 49).

In response to questioning by her attorney, Plaintiff reported that she avoided answering the home telephone if she did not recognize the number (Tr. 50). In addition to biweekly therapy sessions, she saw a psychiatrist once every three months (Tr. 50). Her sleep schedule was erratic due to the use of medication (Tr. 51).

### 2. Perrin Alexander's Testimony

Plaintiff's mother offered the following testimony:

Plaintiff did not complete household chores in a timely fashion and due to distractibility, sometimes took an entire day to finish cleaning the kitchen (Tr. 53). She attributed her daughter's lack of focus to Asperger's syndrome (Tr. 53). She opined that Plaintiff was unable to perform any full-time work due to her tendency to "stress out" and then "shut down" when she believed she performed chores incorrectly (Tr. 54). She noted that while Plaintiff was not diagnosed with an autism-related disorder until adulthood, she observed that Plaintiff's problems with "multiple instructions" and interacting with others as a child (Tr. 55). Plaintiff's mother believed that her daughter was capable of handling her own benefit funds (Tr. 59).

-4-

**B.  Medical Records**

**1.  Records Related to Plaintiff's Treatment**[2]

**a.  The Physical Conditions**

A December, 2015 physical therapy discharge summary includes Plaintiff's report that her knees "slightly" affected her activity but she did not experience swelling or buckling (Tr. 217).  She denied weakness or limping (Tr. 217).  She reported "minimal" problems using stairs, kneeling, and squatting (Tr. 217).  She reported that she was limited "a little" in climbing several flights of stairs (Tr. 218).  She reported that emotional problems interfered with her work "a little" (Tr. 218).  She reported feeling calm, peaceful, and energetic "most of the time" (Tr. 218).

In May, 2016, Muna A. Beenai, M.D.  noted diagnoses of eczema, morbid obesity, bilateral knee pain/instability, and psoriasis (Tr. 295).  Plaintiff reported that she worked as a babysitter and dog sitter (Tr. 296).  In August, 2016, Dr. Beenai noted no new complaints except for concern about obesity (Tr. 292).  November, 2016 records note no progress in attempts to lose weight (Tr. 289).

In May, 2017, Plaintiff denied new physical problems (Tr. 284).  Dr. Beenai's August, 2017 records note that Plaintiff exercised twice a week (Tr. 281).  In June, 2018, Plaintiff reported knee pain (Tr. 535).  Orthopedist Laurie D. Donaldson, M.D. referred her for

---

[2]While Plaintiff alleges disability from birth, the period under consideration is September 21, 2017 (date of application for SSI) to December 14, 2018 (Tr. 26-27).  The Court includes discussion of the earlier records for background purposes only.

-5-

physical therapy (Tr. 537).  Imaging studies of the bilateral knees were unremarkable (Tr. 539).  An August, 2018 physical therapy discharge summary includes Plaintiff's report that her knee pain was "100 percent better than . . .prior to [physical therapy]" (Tr. 493).  She denied knee pain (Tr. 493). Records from the same month by Dr. Donaldson state that she was not continuing with home exercises (Tr. 533).  Plaintiff denied problems walking but reported pain when using stairs (Tr. 533).  An examination of the knees was unremarkable (Tr. 533).

**b. The Psychological Conditions**

May, 2016 records by Dr. Beenai note Plaintiff's report of anxiety (Tr. 295).  Plaintiff reported that she had seen a therapist twice but was unable to continue due to transportation problems (Tr. 295).  November, 2016 records note that Plaintiff was comfortable, cooperative, and in no distress (Tr. 290).  Dr. Beenai noted a diagnosis of Asperger's syndrome (Tr. 290).

In February, 2017, psychiatrist Thomas Park, M.D. completed a biopsychosocial assessment noting Plaintiff's report of anxiety during social interaction and answering telephone calls (Tr. 352).  Plaintiff reported the anxiety symptoms such as shortness of breath, embarrassment, avoidance, and apprehensiveness (Tr. 352).  Dr. Park noted poor eye contact and disinterest in developing peer relationships (Tr. 353).  He noted the depressive symptoms of lack of concentration, fatigue, irritability, and isolation (Tr. 353).  He noted no history of assaultive behavior, substance, abuse, or acting out (Tr. 354).  Plaintiff reported that she was currently looking for a job (Tr. 354).  Plaintiff was friendly and communicative but anxious and mildly depressed with a short attention span (Tr. 355).  The same month, Robyn

-6-

Glickman, Ph.D. commenced therapy treatment, noting normal language skills, logical thinking, and normal thought content (Tr. 357). Plaintiff was minimally communicative and appeared anxious (Tr. 357).

March, 2017 therapy records note full orientation, a normal memory, and logical thinking (Tr. 361). In May, 2017, Dr. Park noted "marked and sustained impairment of social interaction" (Tr. 368). Plaintiff reported that she was looking for any job other than babysitting (Tr. 369). Dr. Park prescribed Zoloft, Klonopin, and Trazodone for psychological symptoms (Tr. 371). Dr. Glickman's notes from later the same month note a recent "anger outburst" (Tr. 374). Therapy records from the following month note decreased psychological symptoms (Tr. 378). Plaintiff reported that although the thought of looking for a job caused anxiety, she was "willing to try" (Tr. 380). She exhibited a normal mood and affect (Tr. 380). Dr. Park's records from the end of the month note unimpaired self care and domestic skills (Tr. 382). Plaintiff exhibited normal judgment (Tr. 382). Dr. Glickman's July, 2017 records note Plaintiff's report of babysitting jobs and her excitement regarding an upcoming movie date (Tr. 384). In August, 2017 Dr. Glickman noted lessened psychological symptoms (Tr. 386). Dr. Beenai's records from the same month note that "ongoing severe anxiety" was "much better since starting medication and psychotherapy" (Tr. 280). Dr. Park's records show similar findings (Tr. 388). Dr. Park's September, 2017 records note normal relationships with family and friends and a normal mood (Tr. 392). Plaintiff was attentive during therapy (Tr. 394). Dr. Park's November, 2017 records note that Plaintiff was preparing to take a written

driver's examination (Tr. 402).

Dr. Glickman's January, 2018 records note that Plaintiff was "visibly upset" after being denied disability benefits (Tr. 405). Dr. Glickman noted that Plaintiff was emotionally labile after failing to take her psychotropic medication (Tr. 405). Dr. Park noted later the same month that Plaintiff had resumed medication use (Tr. 407). The following month, Dr. Park noted that Plaintiff was babysitting, engaged in driver training, and was dating someone from her church (Tr. 412). He noted that Plaintiff's "relationships with family and friends have ceased" (Tr. 412). Plaintiff denied medication side effects (Tr. 412). In March, 2018, Plaintiff reported panic attacks (Tr. 419). The following month, Dr. Park reported no improvement in psychological symptoms (Tr. 421). In March, 2018, Plaintiff reported that she was looking into applying for work as a pet groomer (Tr. 424). April, 2018 records note intact relationships with family and friends and decreased symptoms of social anxiety (Tr. 426). Therapy records from the same month note crying spells (Tr. 429). Dr. Glickman's June, 2018 records note that symptoms had decreased in frequency and intensity and that Plaintiff appeared "friendly, attentive, communicative, and well groomed with a normal mood (Tr. 481).

In August, 2018, Dr. Park completed a medical questionnaire, noting the symptoms of social isolation/withdrawal, lethargy, excitability, and mood swings (Tr. 434). He gave Plaintiff a fair prognosis (Tr. 435). He opined that Plaintiff's work required "flexibility" and "adaptability" in punctuality and attendance (Tr. 435).

The same month, Dr. Glickman completed a mental impairment questionnaire, noting that Plaintiff would likely be absent from work  two days a month due to psychological symptoms(Tr. 437).  She opined that Plaintiff would be off task at least 20 percent of the workday due to psychologically based symptoms and that her work product could be compromised by fatigue, headaches, and sleep disturbances (Tr. 437-438).  The same month, Plaintiff reported that she "called off" a babysitting job (Tr. 488).

## 2.  Non-Treating Records

In December, 2017, Sonia Ramirez-Jacobs, M.D. performed a non-examining review of the medical transcript finding "insufficient evidence" to support Plaintiff's allegation of arthritis (Tr. 70).  Dyan Hampton-Aytch, Ph.D. performed a non-examining review of the psychological treating records, finding that the conditions of autism spectrum disorder and depression caused some degree of work-related limitation (Tr. 71-72).  She found mild limitation in understanding, remembering, or applying information and adaptation/self management and moderate limitation in interacting with others and concentration, persistence, or maintaining pace (Tr. 71).

## C.  Vocational Testimony

At the hearing, the ALJ posed the following set of limitations to the VE, describing a hypothetical individual of Plaintiff's age, educational level, and lack of work history:

> [C]an perform a full range of light work; but the individual would be limited to what is known as low-stress work, defined as simple, routine and repetitive tasks in an environment that's free from fast-paced production, such as assembly line work where each task must be completed within strict time

frames, there would be no more than simple decision making and few, if any work place changes; the individual would be limited to no more than occasional contact with supervisors and contact with coworkers and the general public would be yet incidental; that would also preclude any tandem work groups incidental with coworkers would be defined as encountering or passing in common areas such as maybe time clocks, break rooms, restrooms, lunch rooms, may even be working at the same table with others, but you would not have to interact with them in order to complete your assigned tasks; incidental contact with the general public would be similarly defined meaning that you may pass or encounter them in common areas such as hallways or lobbies, but again, there be no requirement that you interact at all with the general public in order to successfully complete your assigned tasks. Can that hypothetical individual perform any work in the national economy? (Tr. 60).

Citing the *Dictionary of Occupational Titles* ("*DOT*"), the VE testified that the above limitations  would allow for the unskilled, exertionally light work of a packager (at least 35,000 positions in the national economy); sorter (35,000); and visual inspector (35,000) (Tr. 60-61).[3]   He testified further that if the same individual required "frequent supervision in order to timely and correctly complete assigned tasks," no competitive full-time employment would be available (Tr. 61).  Returning to the original list of modifiers, the VE testified that if the restrictions were amended to limit the individual to "less than occasional" supervision,

---

[3]

20 C.F.R. §§  404.1567(a-d); 416.967(a-d) define *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy*  work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

the job findings would remain the same (Tr. 62). He stated that if the individual consistently missed one day of work each week, or was off task more than 25 percent of the workday due to psychologically based symptoms including "withdrawal," isolative behavior, impaired focus, angry outbursts, or mood swings, all competitive work would be eliminated (Tr. 62). He added that the allowed maximum time off task would customarily be 15 percent of the workday (Tr. 63).   He stated that his testimony was consistent with the information found in the *DOT*, adding that the testimony as to time off task and absenteeism was based on his own professional experience (Tr. 63).

### D.   The ALJ's Determination

Citing the medical transcript, ALJ Dietz found that Plaintiff experienced the severe impairments of "morbid obesity; major dysfunction of the bilateral knees; anxiety; autism spectrum disorder; and mood swings" but that none of the conditions met or equaled a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 17-18).   The ALJ found mild limitation in understanding, remembering, or applying information and adaption/self management (Tr. 18-19) and moderate limitation in interacting with others and concentration, persistence, or pace (Tr. 19).

ALJ Dietz determined that Plaintiff had the Residual Functional Capacity ("RFC") for exertionally light work with the following additional restrictions:

> [C]laimant is limited to 'low stress' work, which is defined as: simple, routine and repetitive tasks in an environment free from fast-paced production requirements (such as an assembly line wherein each task must be completed within a strict time frame) with only simple decision-making and few, if any,

workplace changes. The claimant would also be limited to less than occasional contact with supervisors, and only incidental contact with coworkers (no tandem work groups) and the general public. (Incidental contact with coworkers is defined as the ability to encounter or pass coworkers in common areas, such as time clocks, break rooms, restrooms, and lunchrooms, and the claimant may even work at the same table with other workers, but she must not have a requirement to interact with coworkers in order to successfully complete assigned tasks. Lastly, incidental contact with the general public is defined as the ability to pass or encounter the public in common areas, such as hallways, restrooms, or lobbies, but there would be no requirement to interact with the general public in order to successfully complete assigned tasks (Tr. 26).

Citing the VE's testimony (Tr. 60-61), the ALJ determined that Plaintiff could work as a packager, sorter, and visual inspector (Tr. 26).

The ALJ discounted Plaintiff's alleged level of physical and psychological limitation (Tr. 22-23). As to the professed physical impairments, the ALJ noted that the bilateral knee condition had been treated successfully with physical therapy (Tr. 22). She cited treating observations of normal extremities, a normal gait, and a full range of motion (Tr. 22). The ALJ noted that Plaintiff was morbidly obese (Tr. 22). However, the ALJ cited the treating records showing normal neurological findings, a normal gait, and normal musculoskeletal functioning (Tr. 22). The ALJ found that while the physical examinations were "mostly unremarkable" the knee condition and obesity supported a limitation to exertionally light work (Tr. 22).

As to the psychological record, the ALJ cited counseling records showing that Plaintiff was "alert, cooperative, and in no acute distress" (Tr. 23). The ALJ noted that Plaintiff experienced good results from medication and psychotherapy and could babysit,

attend church twice a week and explore career options (Tr. 23).  The ALJ discounting Drs. Park and Glickman's findings of chronic absenteeism, the need for unscheduled breaks, and disability level distractibility (Tr. 24).  The ALJ found that the assessments by Drs. Park and Glickman were contradicted by their own treating records showing that Plaintiff was "friendly [and] communicative, [with] normal speech, and articulation that is coherent and spontaneous" (Tr. 24).  The ALJ cited treating records noting an appropriate affect and congruent mood (Tr. 24).  She observed that the physical treating records noted that Plaintiff was "alert, cooperative, and in no acute distress" and had no significant deficit in "memory, concentration, orientation, mood [or] affect" (Tr. 24).

### III.  STANDARD OF REVIEW

"Under the substantial evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, — U.S. —, 139 S.Ct. 1148, 1154 (2019)(punctuation altered)(*citing Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938))(emphasis deleted).   The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  *Biestek* at 139 S. Ct. at1152; 42 U.S.C. §405(g).   "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r. of Soc. Sec*., 486 F.3d 234, 241 (6th Cir. 2007)(*citing Cutlip v. Sec'y of Health & Human Servs*., 25 F.3d 284, 286

(6th Cir.1994)).

The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(*en banc*). Where substantial evidence supports the ALJ's decision, the reviewing court "defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r. of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)(*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.1997)). However, in determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV. FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe

impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy."  *Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 391–92 (6th Cir. 1999).

## V.  ANALYSIS

Plaintiff makes two arguments in favor of remand.  *Plaintiff's Brief,* ECF No. 12.  She contends first that the finding that she could perform exertionally light work did not fully account for her difficulty walking due to obesity.  ECF No. 12, PageID.589.  She also disputes the  conclusion that her mental limitations were not disabling, arguing that the ALJ erred by declining to accord controlling weight to Drs. Park and Glickman's finding of disabling psychological symptoms.  *Id.* at 591.

### A.  The Physical Limitations

Plaintiff disputes the RFC for exertionally light work, arguing that she is incapable of light work due to obesity and bilateral knee dysfunction.  ECF No. 12, PageID.589.

As stated in footnote 3, *above,* light work requires "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and walking of up to six hours in an eight-hour workday. 20 C.F.R. § 416.967(b). "Even though the weight lifted

may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.*

The ALJ's finding that Plaintiff could walk up to six hours in an eight-hour workday as required for light work is well supported and explained. She cited physical therapy records showing that the knee condition was "100 percent" better following a short course of therapy (Tr. 22). She noted that Plaintiff was able to babysit and dog sit, and by Plaintiff's own account she did not experience limitation in daily activities due to the knee condition (Tr. 22). She noted that imaging studies of the knees were unremarkable (Tr. 22).

These findings are consistent with my own review of the record showing that for the period under consideration, Plaintiff was able to work as a babysitter for young children (including preparing meals, bathroom chores, and putting the children to bed) and pet sit (Tr. 44, 296). Plaintiff denied physical problems in both August, 2016 and May, 2017 (Tr. 284, 292). As of August, 2017, Plaintiff was exercising twice a week (Tr. 281). While Plaintiff sought treatment for knee pain in June, 2018 (Tr. 535), she reported 100 percent improvement after undergoing a short course of physical therapy (Tr. 493). Imaging studies of the bilateral knees were wholly unremarkable (Tr. 539). Plaintiff's allegations of knee pain are also undermined by her documented failure to continue with the recommended home exercises following physical therapy (Tr. 533). *See Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 789 (6th Cir. 2017), *aff'd,* 139 S. Ct. 1148, *supra* (claims of limitation permissibly discounted by

-16-

failure to comply with prescribed treatment).

Plaintiff's claim that the ALJ did not take into account the condition of obesity in making the "light work" finding fails for overlapping reasons. In the instance that a claimant is found to be obese, the Commissioner must conduct an individualized assessment of the impact of the claimant's obesity on his or her functional abilities. SSR 02–1p, 2002 WL 34686281, *3 (June 21, 2002). Here, the ALJ acknowledged the condition of obesity by listing it among Plaintiff's work-related (severe) impairments at Step Two of the analysis (Tr. 17). The ALJ discussed the condition again in her rationale for the RFC, noting that obesity "played on [Plaintiff's] ability to function, and to perform routine movement and necessary physical activity within the work environment" (Tr. 22). However, she noted that Plaintiff was able to walk without an assistive device and exhibited a full range of motion (Tr. 22). She noted that physical examinations, notwithstanding obesity, were essentially unremarkable (Tr. 22). While the treating records do not support the finding that Plaintiff experienced any degree of functional physical limitation for a significant period, she nonetheless limited Plaintiff to light work "to take into account preventing exacerbation of [the] knee impairment along with her diagnosis of morbid obesity" (Tr. 22). By any measure, the ALJ adequately considered obesity and Plaintiff's knee-related limitations in crafting the RFC. SSR 02–1p "does not mandate a particular mode of analysis, but merely directs an ALJ to consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation." *Nejat v. Comm. of Soc. Sec.*, 359 Fed. Appx. 574, 577 (6th Cir. December 22, 2009).

-17-

Plaintiff's additional contention that the walking requirements for "light work" are no more demanding than those for exertionally medium work is not borne out by SSR 83-10, 1983 WL 31251 (1983), which states that while light work "requires a good deal of walking," *id.* at *5, for "most medium jobs," (aside from the baseline requirement of six hours walking or standing) "*being on one's feet for most of the workday is critical*." *Id.* at *6. (Emphasis added). Moreover, "[t]he considerable lifting required for the full range of medium work usually requires frequent bending-stooping," "[f]lexibility of the knees as well as the torso," and "crouching." *Id.* In other words the medium work requirement of walking six hours a day *while* carrying up to 50 pounds, cannot be likened to the maximum lifting of 20 pounds as required for light work. As such, Plaintiff's claim that the requirements for light work does not significantly differ from medium work is directly contradicted by SSR 83-10.

**B. The Mental Limitations**

Plaintiff also takes issue with the ALJ's rejection of Dr. Park's and Dr. Glickman's respective treating "disability" opinions and adoption of Dr. Hampton-Aytch's non-examining opinion that Plaintiff was capable of performing a range of unskilled work. ECF No. 12, PageID.591.

As a threshold matter, Plaintiff's contention that the ALJ was required to accord controlling weight to the opinion of a treating source is erroneously based on the now-eliminated treating physician rule. *Id.* at 595. Under the new regulations, applicable to disability applications filed after March 17, 2017, the ALJ "will not defer or give any

-18-

specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 416.920c(a).  Instead, "[t]he most important factors" to be considered in determining the "persuasiveness of medical opinions . . . are supportability… and consistency." *Id*.  The ALJ is required to state "how persuasive" s/he finds "the medical opinions" in the medical transcript.  § 416.920c(b).

As discussed in Section II.B.1.b, *above,* Dr. Park opined in August, 2018 that Plaintiff would require "flexibility" and adaptability regarding punctuality and attendance in any work activity (Tr. 435).  The same month, Dr. Glickman, working in conjunction with Dr. Park, found that Plaintiff would likely be absent from work due to psychological symptoms two days a month (Tr. 437).  She also opined that Plaintiff would be off task at least 20 percent of the workday due to psychologically based symptoms and that her work product could be compromised by fatigue, headaches, and sleep disturbances (Tr. 437-438).  Notably, the VE testified that chronic absenteeism or the need to be off task 15 percent or more of the workday would preclude all gainful employment (Tr. 62-63).

However, the ALJ provided a well supported rationale for finding that the opinions of Drs. Park and Glickman were "not persuasive" (Tr. 24).  First, she noted that the disability opinions stood at odds with their own treating records showing that Plaintiff was alert, cooperative, friendly, and communicative with normal speech (Tr. 24). The ALJ cited treating records showing intact personal care and domestic skills (Tr. 24).  She noted that Plaintiff's

-19-

symptoms improved with counseling and medication (Tr. 24).  The ALJ noted further that the physical examination records did not show deficits in memory, concentration, orientation, mood, or affect (Tr. 24).  She noted that the psychiatric/psychological treating records stated that Plaintiff was exploring career options and was considering work as a pet groomer (Tr. 24).  The ALJ's summation of the treating evidence is wholly consistent with my own review of the record.

The ALJ did not err by instead adopting Dr. Hampton-Aytch's non-examining finding that Plaintiff experienced only mild limitation in understanding, remembering, or applying information and adaptation/self management and moderate limitation in interacting with others and concentration, persistence, or maintaining pace (Tr. 71).  The ALJ noted that the finding of no more than moderate psychological limitation was supported by Plaintiff's admission that she was able to independently perform tasks such as cooking, self care, household chores, babysitting, and walking the dog (Tr. 24-25).  Further, the RFC for unskilled work is accompanied by a comprehensive list of modifiers accounting for Plaintiff's moderate social and concentrational limitations: "simple, routine and repetitive tasks in an environment free from fast-paced production requirements (such as an assembly line wherein each task must be completed within a strict time frame) with only simple decision-making and few, if any, workplace changes" and  "less than occasional contact with supervisors, and only incidental contact with coworkers (no tandem work groups) and the general public" (Tr. 20).

In her reply brief, Plaintiff contends that Dr. Hampton-Aytch's assessment should be

rejected because she did not have the benefit of Drs. Park and Glickman's August, 2018 assessments when making her December, 2017 findings. ECF No.16, PageID.627. Plaintiff is correct that as a rule, "updated" medical records are to be accorded more weight than older ones. *See Brooks v. Comm'r of Soc. Sec.*, 531 Fed.Appx. 636, 642 (6th Cir. 2013)(ALJ's adoption of non-examining source's earlier opinion over the more recent examining findings grounds for remand). However, the adoption of the older records over newer ones does not automatically constitute error. An ALJ is not barred from according greater weight to the older records provided that she gives some indication that she considered the more recent evidence. Courts "require 'some indication that the ALJ at least considered these new facts before giving greater weight to an opinion that is not based on a review of a complete case record.'" *Brooks*, 531 Fed.Appx. at 642 (6th Cir. 2013)*(citing Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009))(internal citations omitted).

Here, the reviewing Court has, at a minimum, "some indication" that the ALJ considered the psychiatric/psychological records created after Dr. Hampton-Aytch made her December, 2017 assessment. The ALJ cited records from the "the year 2018" showing that Plaintiff was babysitting, attending church twice a week, and was exploring career options other than babysitting (Tr. 23). My own review of the 2018 records shows that Plaintiff was engaged in driver's training, denied medication side effects, experienced reduced symptoms of social anxiety, and appeared friendly, attentive, communicative, and well groomed with a normal mood (Tr. 412, 426, 481). Because the ALJ's adoption of Dr. Hampton-Aytch's findings is

informed by the subsequently created evidence, a remand on this basis is not warranted.

In closing, my recommendation to uphold the ALJ's determination should not be read to trivialize Plaintiff's psychological and physical diagnoses. However, because the ALJ's decision is comfortably within the "zone of choice" accorded to the fact-finder at the administrative hearing level, it should not be disturbed by this Court. *Mullen v. Bowen, supra*.

## VI.   CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment [ECF No. 15] be GRANTED and that Plaintiff's Motion for Summary Judgment [ECF No. 12] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection #1," "Objection #2," etc., and any objection must recite *precisely* the provision of this Report and Recommendation to which it

-22-

pertains.  Not later than 14 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," *etc.*


                                          s/R. Steven Whalen
                                          R. Steven Whalen
                                          United States Magistrate Judge

Dated: January 14, 2021


### CERTIFICATE OF SERVICE

     I hereby certify that a copy of the foregoing document was sent to parties of record on January 14, 2021 electronically and/or by U.S. mail.


                                            s/Carolyn M. Ciesla
                                          Case Manager